```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
In re

KP FASHION COMPANY,
                                           MEMORANDUM AND ORDER
              Debtor.
-----------------------------------X       10 Civ. 8429 (NRB)
JOHN S. PEREIRA, Chapter 7 Trustee,

              Appellant,

       - against -

RICH-TAUBMAN ASSOCIATES,

              Appellee.
-----------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This is an appeal brought by appellant John S. Pereira, the Chapter 7 Trustee of KP Fashion Company (the "Trustee" or "appellant") from an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), entered on September 29, 2010, denying the Trustee's motion for an order expunging an administrative claim (the "Administrative Claim") of the appellee, Rich-Taubman Associates ("Taubman" or "appellee"). For the reasons set forth below, the Bankruptcy Court's order is affirmed.

## BACKGROUND[1]

---

[1] The following facts are drawn from the parties' briefs (Brief of Appellant, John S. Pereira, as Chapter 7 Trustee of KP Fashion Company ("Trustee's Br."), Brief of Appellee Rich-Taubman Associates ("Taubman Br."), and Reply

Taubman and KP Fashion Company (the "Debtor") were parties to a commercial real estate lease (the "Lease") dated February 12, 2008, under which the Debtor leased space (the "Premises") from Taubman in the Stamford Town Center in Stamford, Connecticut.  Taubman maintained a letter of credit as collateral.

On December 31, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  The appellant was appointed as the Trustee pursuant to 11 U.S.C. § 701.  On January 20, 2009, the Trustee filed a Notice of Presentment for the issuance of an order rejecting the Lease nunc pro tunc to the Petition Date.  Taubman filed a limited objection the motion, challenging the request for nunc pro tunc relief.  In its objection, Taubman stated that the Premises had not been vacated by the Trustee or returned to Taubman, that furniture and other equipment belonging to the estate was still on the Premises, and that representatives of the Trustee were marketing the space and showing it to potential assignees.  See Taubman Br. at 3.

On January 30, 2009, the Bankruptcy Court entered an order which stated "that the [Lease] between the Debtor and [Taubman]

---

Brief of Appellant, John S. Pereira, as Chapter 7 Trustee of KP Fashion Company ("Trustee's Reply Br.")), and the record before the Bankruptcy Court.  Unless otherwise noted, the facts are not materially in dispute.  We reference entries on the Bankruptcy Court's docket with the notation "Bankr. Dkt."

2

for the [Premises] be and hereby is rejected effective as of a date no later than 5:00 p.m. on January 30, 2009, subject to (a) return to [Taubman] of all keys, and copies thereof, to the Premises, and (b) immediate surrender of the Premises to [Taubman], all of (a) and (b) being pursuant to 11 U.S.C. § 365(d)(4)." Bankr. Dkt. 82 (emphasis in original).  On the same day that the Bankruptcy Court entered its order, a representative of the Trustee provided Taubman with the keys to the Premises.  Taubman Br. at 4.

After the Court's order, Taubman filed two claims in connection with the Lease.  At issue in this case is Taubman's Claim Number 5 (the "Administrative Claim") for $33,614.47, which reflects the amount due under the Lease on January 1, 2009 (adjusted downward to account for the fact that the Lease was rejected on January 30, 2009).  Id. at 4.[2]

On August 13, 2010, the Trustee filed a motion for an order expunging the Administrative Claim.  In its motion to the Bankruptcy Court, the Trustee argued (1) that the Lease should be rejected nunc pro tunc to the Petition Date, (2) that if the Lease is not rejected nunc pro tunc to the Petition Date, "any administrative expense allowed to [Taubman,] should be in an amount far less than that set forth in the Lease between the

---

[2] The full amount due under the lease for the month of January was $34,734.96.

3

Debtor and [Taubman]", and (3) that if any administrative claim is allowed, the Bankruptcy Court "should direct that the proceeds of the irrevocable standby letter of credit in the amount of $360,000.00 drawn by [Taubman] and which is collateralized with cash of the Debtor should be applied first to the payment of the administrative claim." Bankr. Dkt. 324. On September 8, 2010, Taubman filed a response to the Trustee's motion. Bankr. Dkt. 331. The Trustee filed a reply on September 15, 2010. Bankr. Dkt. 339.

At a hearing on September 16, 2010, the Bankruptcy Court denied the Trustee's objections and upheld Taubman's Administrative Claim. The Bankruptcy Court entered an order denying the motion and upholding the Administrative Claim on September 29, 2010. The Trustee filed a Notice of Appeal on October 8, 2010.

## DISCUSSION

### I. Standard of Review

When reviewing a Bankruptcy Court's decision, we "accept[ ] its factual findings unless clearly erroneous but review[ ] its conclusions of law de novo." DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75, 79 (2d Cir. 1998); see also Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.), 209 F.3d 125, 128 (2d Cir. 2000).

### II. Analysis

**A. Collateral Estoppel**

Taubman argues that the Trustee's request for nunc pro tunc rejection of the Lease is prohibited by the doctrines of res judicata and collateral estoppel.  This is because, Taubman contends, the Bankruptcy Court's January 30, 2009 Order already denied the Trustee's motion for nunc pro tunc rejection and has, pursuant to Federal Rule of Bankruptcy Procedure 8002, been a final, non-appealable order since February 10, 2009.[3]  In response, the Trustee contends that "the January 30, 2009 Order did not deny the Trustee's request for nunc pro tunc rejection" because "[i]t would be senseless to have an order entered the same day that provides for rejection no later than said date." Trustee's Reply Br. at 2 (emphasis in original).  The Trustee contends that the January 30, 2009 Order "merely fixed an outside date for the effective date of rejection" and, therefore, "was not a final order concerning the effective date of rejection of the Lease."  Id.

"Res judicata evokes the common law principles of judicial economy and comity.  It provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action." Channer v. Dep't of Homeland Sec., 527 F.3d 275, 279 (2d Cir. 2008).  "Provided the parties have

---

[3] Federal Rule of Bankruptcy Procedure 8002(a) provides, inter alia, that a "notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from."

had a full and fair opportunity to litigate the matter, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Id. (brackets in original) (internal quotation marks omitted). Similarly, the doctrine of collateral estoppel bars relitigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (quoting United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks omitted).

Here, by conditioning the rejection date of the Lease upon the Trustee's return of the keys and immediate surrender of the premises -- neither of which had occurred at the time the Order was entered -- the Bankruptcy Court's January 30, 2009 Order (which was apparently submitted to the Bankruptcy Court as a proposed order negotiated by the parties (Taubman Br. at 3)) necessarily denied the Trustee's motion for rejection of the Lease nunc pro tunc to the Petition Date. The Trustee's contention that the January 30, 2009 Order "merely fixed an

6

outside date for the effective date of rejection" ignores the fact that, under the terms of the Order, any such "outside date" could not have been the Petition Date because the conditions for rejection had not been met at that time.  Thus, the Trustee had a "full and fair opportunity" to litigate this exact issue, which was "actually litigated and actually decided," and which was "necessary to support a valid and final judgment on the merits."

### B. Retroactive Rejection

Even if the Trustee's motion for nunc pro tunc rejection were not collaterally estopped, we find that the Bankruptcy Court did not abuse its discretion in denying the Trustee's request for nunc pro tunc rejection of the Lease.[4]

Section 365(a) of the Bankruptcy Code provides that a "trustee, subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(d)(3) provides that the trustee "shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2) arising from and after the order for relief under any unexpired lease of

---

[4] Appeals from a bankruptcy court's disposition of a request for retroactive relief are reviewed for abuse of discretion. Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 607 (2d Cir. 2007) ("We . . . follow our sister circuits, which . . . review . . . retroactivity decisions for abuse of discretion"); BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), 2002 WL 31548723 (NRB), at *2 (S.D.N.Y. Nov. 15, 2002) (citing In re Thinking Machines Corp., 67 F.3d 1021, 1028 n.8 (1st Cir. 1995).

7

nonresidential real property, <u>until such lease is assumed or rejected</u>." Id. at § 365(d)(3) (emphasis added).

Although there is a split in authority as to the effective date of rejection for purposes of section 365(d)(3), "[t]he majority of courts faced with this issue have held that the effective date of rejection is the date of the bankruptcy court's order approving rejection, and that court approval is a condition precedent to effective rejection." <u>In re Jamesway Corp.</u>, 179 B.R. 33, 37 (S.D.N.Y. 1995). <u>See, e.g.</u>, <u>In re Federated Department Stores, Inc.</u>, 131 B.R. 808, 814-15 (S.D. Ohio 1991) ("[T]he effective date of rejection for purposes of 11 U.S.C. § 365(d) was the date of the bankruptcy court's order approving the rejection[.]"); <u>In re 1 Potato 2, Inc.</u>, 182 B.R. 540, 542 (Bankr. D. Minn. 1995) ("[R]ejection of a lease is only effective upon court approval."). "The minority view is that rejection is effective when the landlord receives unequivocal notice of the debtor's intent to reject, and that rejection may occur prior to issuance of the order approving rejection." <u>In re Jamesway Corp.</u>, 179 B.R. at 37.

Here, the Trustee argues that "the Bankruptcy Court should have exercised its equitable power and authorized the rejection of the Lease <u>nunc pro tunc</u> to the Petition Date" because the Trustee "could not possibly have acted more expeditiously without abdicating his obligations to the estate." Trustee's

8

Br. at 5. While it does appear that the Trustee acted expeditiously after the Petition Date,[5] the Trustee's conduct does not provide a basis upon which to find that the Bankruptcy Court erred -- let alone abused its discretion -- in signing the parties' proposed rejection order and conditioning rejection of the Lease upon the Trustee turning over the keys to (and vacating) the Premises. Indeed, the Trustee's request for nunc pro tunc rejection to the Petition Date seeks relief that would extend even beyond the "minority view . . . that rejection is effective when the landlord receives unequivocal notice of the debtor's intent to reject." In re Jamesway Corp., 179 B.R. at 37.[6] In any event, the relevant question here is not whether the Bankruptcy Court had the discretion to issue a retroactive order[7], but rather whether the Bankruptcy Court abused its

---

[5] At the hearing on the Trustee's motion to expunge the Administrative Claim, the Bankruptcy Court commended the Trustee, noting that he "acted very efficiently and fairly, and . . . got out so as to avoid another month's accrual[.]" Transcript of Sept. 16, 2010 Hearing before Judge Gropper ("Tr."), at 26:1-2)).

[6] For example, in In re Jamesway Corp., the district court affirmed the bankruptcy court's order retroactively setting the rejection date to the last day for filing objections to the debtor's rejection motion. The bankruptcy court found that the landlord's objection to the motion was improper and thus that the court could have authorized the rejection as of the last day for filing objections. See In re Jamesway Corp., 179 B.R. at 38. (However, the bankruptcy court denied the debtor's motion for nunc pro tunc rejection of the lease to an earlier (pre-motion) date.) Id. at 38. No such comparable circumstances exist in this case.

[7] At the hearing on the Trustee's motion to expunge the Administrative Claim, the Bankruptcy Court stated: "I certainly have granted retroactive orders, retroactive to the date of the bringing of the motion and notice. Especially when the property is vacant, and the landlord can take possession of it." Tr. at 25:20-24. Furthermore, we note that this Court has held, in a case involving gas purchase contracts, "that a bankruptcy court is not precluded as a matter of law from authorizing a rejection date which precedes the

9

discretion by <u>not</u> doing so in this case. For the reasons set forth above, we find that the Bankruptcy Court's rejection order was reasonable and certainly not an abuse of discretion.

**C. The Amount of the Administrative Claim**

The Trustee argues that, in the event that the Administrative Claim is not expunged, "any administrative expense allowed to Taubman should be in an amount far less than that set forth in the Lease between the Debtor and Taubman." Trustee's Br. at 5. The Trustee contends that because it "never truly used" the property, but rather "safeguarded" it, "the amount should be <u>d[e]</u> <u>minimus</u>." <u>Id.</u>

Under section 365(d)(3) of the Bankruptcy Code, "[t]he trustee shall timely perform all obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real estate, until such lease is assumed or rejected, <u>notwithstanding section 503(b)(1) of this title</u>." 11 U.S.C. § 365(d) (emphasis added). Section 503(b)(1) allows for administrative expenses for the "actual necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1).

Section 365(d) was amended in 1984 "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and

---

filing of objection when the equities demand such remediation." <u>BP Energy Co.</u>, 2002 WL 31548723, at *3.

10

assumption or rejection of a lease." In re Pudgie's Dev. of NY, Inc. 239 B.R. 688, 692 (S.D.N.Y. 1999). "The majority of courts agree that § 365(d)(3) now gives landlords a right to payment in the full amount of rent and other charges under the lease without showing that the amount is reasonable or of benefit to the estate." Id. See In re BH S&B Holdings LLC, 401 B.R. 96, 103-04 (Bankr. S.D.N.Y. 2009) (following the majority rule); In re Comdisco Inc., 272 B.R. 671, 676 (Bankr. N.D. Ill. 2002) ("The debtor in possession is . . . required to timely perform the debtor's lease obligations in spite of anything contained in § 503(b)(1)."); In re Wingspread Corp., 116 B.R. 915, 925 (Bankr. S.D.N.Y. 1990) (stating that [the phrase] "'notwithstanding section 503(b)(1)' [means] that irrespective of whether the payments required under the lease meet the usual requirements for administrative status, reasonableness and benefit to the estate, they are unconditionally due (unless the landlord has engaged in some act which warrants reduction, denial or deferral of payment)"). See also 3 Collier's on Bankruptcy ¶ 365.04[3][g][ii] (16th ed.) ("A majority of courts interpret section 365(3)(d) as granting the lessor automatic administrative expense treatment, independent of section 503(b), which ordinarily governs allowance of administrative expenses, for the amount called for by the lease."). But see In re Orvco,

Inc., 95 B.R. 724 (9th Cir. B.A.P. 1989); In re Mr. Gatti's, Inc. 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994).

We agree with the majority view and find that, under the plain language of section 365(d), the lessor need not show that the amount due is reasonable or of benefit to the estate. Thus, the Bankruptcy Court properly denied the Trustee's objection to the administrative claim for the amount due under the Lease.

**D. Evidentiary Hearing**

Next, the Trustee argues that the Bankruptcy Court erred by not taking evidence concerning the "other charges" in the Administrative Claim. Specifically, the Trustee objects to a portion of the Administrative Claim that involved "other charges" amounting to $15,148.74 "which was above and beyond the base rent." Trustee's Br. at 6-7. The Trustee contends that "[t]here was no evidence presented at the hearing on this portion of the claim." Id. at 7.

Under Federal Rule of Bankruptcy Procedure 3001(f), a creditor's "proof of claim executed and filed in accordance with [the rules of Bankruptcy procedure] shall constitute prima facie evidence of the validity and amount of the claim." "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations of the claim." Reilly v. Novak, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).

12

Here, Taubman's Administrative Claim submitted to the Bankruptcy Court included an exhibit setting forth the various expenses under the lease. These included, inter alia, fees for common area maintenance, electricity, and air conditioning. Bankr. Dkt. 324, Ex. A-1. Taubman contends, and the Trustee does not dispute, that these charges "were obligations of the debtor (and hence the Trustee) under the Lease." Taubman Br. at 11. Rather, the Trustee argues that "there is nothing in the record below which conclusively indicates the propriety of these 'other charges' or that they are properly administrative claims." Trustee's Reply at 3 (emphasis added).

As a preliminary matter, the Trustee's questioning of the "other charges" is not "evidence which, if believed, would refute" the claim (Reilly, 245 B.R. at 773), and thus is insufficient to overcome the validity of the claim. In any event, there appears to be no dispute that these "other charges" were provided for in the Lease. As such, they are properly administrative claims. See In re Pudgie's Dev., 239 B.R. at 692 (describing the "majority" view that "§ 365(d)(3) now gives landlords a right to payment in the full amount of rent and other charges under the lease") (emphasis added); 3 Collier's on Bankruptcy ¶ 365.04[1] (16th ed.) ("The statutory requirement that the trustee 'timely perform all the obligations . . .

13

arising from and after the order for relief' does not appear to be limited to rent payment obligations.").[8]

### E. Application of the Letter of Credit

Finally, the Trustee contends that the Bankruptcy Court erred by not applying Taubman's letter of credit proceeds to the Administrative Claim. As a preliminary matter, we note that the Trustee does not address this argument in its reply brief. In any event, the Bankruptcy Court did not err by rejecting it. We agree with the Bankruptcy Court's assessment of the cases cited by Trustee, "none of which apply [letter of credit] funds against the administrative claim." Tr. at 17:08. For example, in In re Stonebridge Technologies Inc., 430 F.3d 260 (5th Cir. 2005), the Fifth Circuit held that where a landlord did not file a claim against the estate, it could draw upon its letter of credit to recover damages beyond the capped amount under 11 U.S.C. § 502(b)(6).[9] And in In re AB Liquidating Corporation,

---

[8] The Trustee further contends that Taubman admits that some of the "other charges" "'do not reflect actual usage.'" Trustee's Reply at 3-4 (quoting Taubman Br. at 11 n.7). As noted above, however, the relevant issue for the assessment of an administrative claim is not "actual usage." Here, the Trustee does not dispute that under the terms of the lease, some of the charges were not based on actual usage.

[9] 11 U.S.C. § 502(b)(6) limits the claim "of a lessor for damages resulting from the termination of a lease of real property" to the extent that the "claim exceeds –
    (A) the rent reserved by the lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of –
        (i) the date of the filing of the petition; and
        (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
    (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]"

416 F.3d 961 (9th Cir. 2005), the 9th Circuit held that funds from a letter of credit should be applied against the capped claim under § 502(b)(6), instead of gross damages.[10]

As the court stated in In re PYXSYS Corporation, 288 B.R. 309, 319 (Bankr. D. Mass. 2003), "it is clearly the case that Congress intended the amount of a security deposit to be applied to a landlord's pre-petition claims, whether by way of lease arrearages or lease rejection damages."). See also In re Far West Corp. of Shasta Cnty., 120 B.R. 551, 552 (Bankr. E.D. Cal. 1990) (noting the "parties['] agreement that a security deposit generally cannot be applied against a landlord's postpetition administrative rent claim but, rather, must be applied against any prepetition, unsecured claim the landlord might have against the debtor/tenant."). Here, the Trustee does not dispute that the funds from the letter of credit, which Taubman drew upon and applied to its pre-petition claims under the lease, were in fact insufficient to satisfy the pre-petition amount due to Taubman. Those funds were properly applied to Taubman's pre-petition claim, and thus the Bankruptcy Court properly denied the Trustee's motion for the funds to be applied to the Administrative Claim.

---

[10] Indeed, in response to the Bankruptcy Court's inquiry as to whether there is any case authority to support the application of letter of credit proceeds to an administrative claim, counsel for the Trustee stated that he did not believe there was.  Tr. at 16:15-16.

15

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order is affirmed.

Dated:   New York, New York
         August 26, 2011

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

Attorney for Appellant:
Harold D. Jones, Esq.
Jones & Schwartz, P.C.
1 Old Country Road, Suite 384
Carle Place, NY 11514

Attorney for Appellee:
Donna H. Lieberman, Esq.
Jule D. Dyas, Esq.
Halperin Battaglia Raicht, LLP
555 Madison Avenue, 9th Floor
New York, NY 10022-3301